IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

UNITED STATES OF AMERICA, :
:
:
:
:
v. : Case No. 1:12-cr-40 (WLS)
:
LAWTON C. HEARD :
:
    Defendant. :
:

## **ORDER**

During the second day of testimony in the jury trial of the above-captioned case, the Government requested a bench conference seeking the Court's permission to introduce out-of-court coconspirator statements from Government witness Brad Heard, Jr. ("B.J. Heard"). Specifically, the Government sought to elicit testimony from B.J. Heard regarding a conspiracy to obtain nominee loans on B.J. Heard's behalf. After argument, the Court, outside hearing of the jury, ruled this testimony admissible, for the following reasons.

Although out-of-court statements offered for the truth of the matter asserted are generally inadmissible as hearsay, Fed. R. Evid. 802, statements of a party's coconspirator made in furtherance of the conspiracy are not hearsay when offered against that party, Fed. R. Evid. 801(d)(2)(E). To introduce a coconspirator statement, the proponent must establish by a preponderance of the evidence that (1) a conspiracy existed, (2) the conspiracy included the declarant and the defendant against whom the statement is offered, and (3) the statement was made during the course of and in

1

furtherance of the conspiracy. *United States v. Underwood*, 446 F.3d 1340, 1345–46 (11th Cir. 2006). Under this framework, the Eleventh Circuit has held that statements made in furtherance of a conspiracy before a defendant joins the conspiracy are admissible. *United States v. Lampley*, 68 F.3d 1296 (11th Cir. 1995). It is well established that the Government may establish the existence of a conspiracy through circumstantial evidence. *United States v. Prince*, 883 F.2d 953, 957 (11th Cir. 1989).

The evidence was adequate to establish these elements. The Government's primary theory during the trial was that the Defendant participated in a conspiracy to obtain nominee loans from SWGFC on behalf of B.J. Heard, who had reached his borrowing limit with SWGFC. To that end, the Government introduced the Note and supporting documents on a $735,000 loan the Defendant obtained from SWGFC on January 27, 2006. Within weeks of obtaining that loan, Defendant funneled nearly $300,000 to B.J. Heard, his nephew. Rather than listing his nephew as the recipient of these funds, Defendant represented that January 27, 2006 loan's purpose was farming expenses. In addition, Defendant testified during a bankruptcy proceeding that he had in fact loaned B.J. Heard around $300,000.

The Government also introduced evidence suggesting unlawful conduct on a June 21, 2007 loan from SWGFC to Brad Heard Sr. in the amount of $200,000. Although Brad Heard Sr. represented that this loan was to purchase a head of cattle, he endorsed a $200,000 check the day before to B.J. Heard, his son. To support this loan, the Defendant allegedly prepared a fictitious bill of sale for the cattle. An accountant familiar with the Defendant's signature testified to recognizing the signature on the bill of sale.

SWGFC's former Chief Financial Officer Larry Malone tied this evidence together. He testified he spoke with both the Defendant and B.J. Heard before issuing the loan on January 27, 2007. He testified that, though the stated purpose of the loan was farming expenses, "it was agreed upon" that a large portion would go to B.J. Heard to pay off existing debt. Additionally, Malone testified about how he used the Defendant, Brad Heard Sr., and Craig Howell to straw borrow on behalf of B.J. Heard. The Government also presented considerable evidence as to the close association of Defendant and other family members indicted and charged as co-defendants. They shared office space in close proximity to each other and communicated often. These factors could support a reasonable inference that the Defendant would be able to and did participate in the alleged conspiracy described by Malone.

Therefore, altogether, the testimony and exhibits provided sufficient facts to establish by a preponderance of the evidence that a conspiracy existed and the Defendant, his codefendants, and Malone were part of it. It follows that the testimony during B.J. Heard's testimony about the recruitment of the Defendant and Craig Howell and the purposes of various loans were admissible because they were made in furtherance of the conspiracy. The oral findings of the Court, by reference, are made a part of this Order.

**SO ORDERED**, this __1st__ day of November, 2013.

               /s/ W. Louis Sands
               **THE HONORABLE W. LOUIS SANDS,**
               **UNITED STATES DISTRICT COURT**